Rebecca K. Smith
PUBLIC INTEREST DEFENSE CENTER, PC
P.O. Box 7584
Missoula, MT 59807
(406) 531-8133
publicdefense@gmail.com

Timothy M. Bechtold
BECHTOLD LAW FIRM, PLLC
P.O. Box 7051
Missoula, MT 59807
(406) 721-1435
tim@bechtoldlaw.net

Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# MISSOULA DIVISION

| | |
|---|---|
| SWAN VIEW COALITION, FRIENDS OF THE WILD SWAN, NATIVE ECOSYSTEMS COUNCIL, and ALLIANCE FOR THE WILD ROCKIES<br>            Plaintiffs,<br>vs.<br><br>CHIP WEBER, Flathead National Forest Supervisor, FAYE KRUEGER, Regional Forester of Region One of the U.S. Forest Service, UNITED STATES FOREST SERVICE, an agency of the U.S. Department of Agriculture, and UNITED STATE FISH & WILDLIFE SERVICE, an agency of the U.S. Department of the Interior,<br><br>            Defendants. | CV- 13-129-M-DLC<br><br>PLAINTIFFS' PRELIMINARY PRETRIAL STATEMENT |

Pursuant to the Court's order of June 24, 2013 (Dkt. 3), Plaintiffs submit the following preliminary pretrial statement in accordance with Local Rule 16.2(b)(1). As noted in Plaintiffs' prior filing, Plaintiffs believe this case is an "exempt case" under Local Rule 16.2(a) because it is "an action for review on an administrative record" under Fed. R. Civ. P. 26(a)(1)(B)(I), and therefore no trial will occur in this matter, so preliminary pretrial procedures should not apply.  However, in light of Federal Defendants' citation to CV 13-99-M-DWM, Dkt. 19 n.1, in an abundance of caution, Plaintiffs hereby submit this preliminary pretrial statement.

PRELIMINARY PRETRIAL STATEMENT

**I.  Brief factual outline of the case:**

This is a civil action for judicial review under the citizen suit provision of the Endangered Species Act and the Administrative Procedure Act of the U.S. Forest Service's (Forest Service) and U.S. Fish and Wildlife Service's (FWS) authorizations of the Glacier Loon Project (Project) on the Flathead National Forest (Forest), and the Flathead National Forest Land and Resource Management Plan (Forest Plan).  Plaintiffs Swan View Coalition, Friends of the Wild Swan, Alliance for the Wild Rockies, and Native Ecosystems Council attest that the decisions approving the Project and Forest Plan are arbitrary and capricious, an abuse of discretion, and/or otherwise not in accordance with law.  Defendants' approval of

1

the Project and Forest Plan and corresponding documents as written is a violation of the National Environmental Policy Act (NEPA), 42 U.S.C. 4331 *et seq.*, the National Forest Management Act (NFMA), 16 U.S.C. § 1600 *et seq.*, the Endangered Species Act (ESA), 16 U.S.C. § 1531 *et seq*, and the Administrative Procedure Act (APA), 5 U.S.C. §§ 701 *et seq.*

## II.  Basis for federal jurisdiction and for venue in the Division:

This action arises under the laws of the United States and involves the United States as a Defendant.  Therefore, this Court has subject matter jurisdiction over the claims specified in Plaintiffs' complaint pursuant to 28 U.S.C. §§ 1331, 1346. Venue in this case is proper under 28 U.S.C. § 1391(e) and LR 3.3(a)(1). Defendant Krueger, the chief representative for U.S. Forest Service Region One, and the chief representative of the U.S. Forest Service in the State of Montana, resides within the Missoula Division of the United States District Court for the District of Montana

## III.  Factual basis and underlying legal theory for each claim or defense:

A.  FIRST CLAIM FOR RELIEF:  The Project and the agencies' analyses, actions ,and omissions regarding the grizzly bear violate the ESA, NFMA, NEPA, and the APA.  The agencies' conclusion that the Project will not adversely affect the grizzly bear is arbitrary and capricious.  An adverse effect will certainly occur if there is "take."  The most recent Amendment 19 biological opinion/incidental take

2

statement finds that take, in the form of harm, occurs if road density exceeds the 19/19/68 thresholds. Road density exceeds this threshold in the Project area before, during, and after Project implementation. Thus, there is take. Thus, there is an adverse effect. There are also numerous other indications of adverse effects from the Project, as discussed above, including but not limited to a decrease in forage, a decrease in hiding cover, a decrease in habitat security, and an increase in the potential for displacement.

In fact, the Forest Service concedes the Project will have "short-term negative effects" to grizzly bears. Moreover, the Project also violates the take threshold in the 2005 Amendment 19 biological opinion/incidental take statement that prohibits any increase in road density. Both open and total motorized route density will increase during Project implementation. The Forest Service does not have a take permit for the take in this Project area. The Forest Service fails to demonstrate compliance with Amendment 19 itself because the subunits in the Project area now have over 75% National Forest lands but do not comply with 19/19/68. The Environmental Assessment completely fails to address this issue, and thus failed to take a hard look at it. Moreover, there has been a net increase in total motorized route density, and a net decrease in core, in the Glacier Loon subunit. Additionally, there will be another net increase in density after Project implementation until roads

3

slated for decommissioning are fully revegetated.

The Forest Service also fails to demonstrate compliance with other Forest Plan provisions such as the hiding cover standard and the Guidelines, including but not limited to the compatible use standard. The Forest Service fails to demonstrate that the Project complies with the Swan Valley conservation agreement, including but not limited to the open motorized route density limit and goal, the provision prohibiting more than four active subunits, the provision restricting how many subunits may be active at a time during each Bear Management Unit, the no increase in open and total motorized route density requirement, and the requirement requiring analysis of hiding cover in each subunit across all ownerships.

Accordingly, the Forest Service's failures to comply/demonstrate compliance with the Forest Plan violate NFMA and NEPA; the Environmental Assessment fails to take a hard look at grizzly bear issues in violation of NEPA; the Forest Service's representation that it is complying with the Swan Valley conservation agreement and/or failure to comply with the Swan Valley conservation agreement violates NEPA and/or NFMA; the agencies' conclusion that the Project is not likely to adversely affect grizzly bears violates the ESA; and the lack of an incidental take permit for this Project violates the ESA.

B.  SECOND CLAIM FOR RELIEF:  The Project and the agencies'

analyses, actions ,and omissions regarding the wolverine violate the ESA and the APA.  Wolverines are proposed for listing under the ESA and will be listed before or during Project activities.  Wolverines may be present in the Project area and the Project may affect them.  The Final Rule for ESA Section 7 consultation regulations requires that the action agency address proposed species in a biological assessment:

> A biological assessment contains information concerning listed *or proposed species* or designated or proposed critical habitat *that may be present* in the action area *and an evaluation of any potential effects of the action on such species and habitat.* A biological assessment should be used in determining whether formal consultation or a conference is required.

51 Fed. Reg. 19940 (June 3, 1996)(emphasis added).

The Forest Service prepared a biological assessment  for the Project for terrestrial wildlife species (lynx and grizzly bear) but did not include the wolverine in the biological assessment for the Project.  The agencies' failure to include the wolverine in the biological assessment for the Project violates the ESA and APA and is arbitrary and capricious.

      C.  THIRD CLAIM FOR RELIEF:  The Project and the agencies' analyses, actions, and omissions regarding lynx and lynx critical habitat violate the ESA, NFMA, NEPA, and the APA.  During an ESA consultation, if the agencies agree that an activity is likely to adversely affect an ESA-listed species, FWS must

prepare a biological opinion to ensure that the activity will not jeopardize the species. A biological opinion must use the best available science at the time of consultation for the activity. The agencies agree that the Project is likely to adversely affect lynx and lynx critical habitat. FWS did not prepare a biological opinion for the Project to ensure that the Project will not jeopardize lynx. FWS did not prepare an incidental take statement for lynx for the Project.

Instead of preparing a biological opinion and incidental take statement for the Project, the agencies rely on a six year old biological opinion for the regional Northern Rockies Lynx Management Direction ("Lynx Direction"), which was amended to the Forest Plan in 2007. This regional biological opinion for a different activity cannot and does not adequately substitute for a biological opinion for this Project. In fact, the Lynx Direction biological opinion states: "site specific consultation (second tier) is required for actions that may affect listed species, including those conducted under the exceptions and exemptions." It also states: "Second tier biological opinions would be issued as appropriate, where proposed actions would result in adverse effects to lynx." The agencies' failure to complete a biological opinion/incidental take statement for lynx before authorizing and implementing the Project violates the ESA and is arbitrary and capricious. The broad-scale regional biological opinion relied upon does not address all the relevant

6

factors for the Project and is not based on the best available science, including the declining lynx population in the Seeley area, the importance of the Glacier loon Project area as one of the three best remaining areas that support lynx in the Swan , and the thousands of acres of recent, ongoing, and planned lynx habitat elimination in the Seeley/Swan.

Accordingly, the Forest Service does not have an adequate take permit that covers the Project's incidental take of lynx.  Moreover, the agencies' biological assessment and biological opinion addressing lynx critical habitat in the Project area are also unlawful because they fail to address the impact of the Project on lynx recovery.  Additionally, neither the Environmental Assessment nor the Biological Assessment for lynx addresses whether the Project complies with Standard ALL S1 from the Lynx Direction.  Projects involving "fuels management" in the "wildland urban interface" are not exempt from compliance with Standard ALL S1.

The Environmental Assessment also fails to adequately assess the cumulative effects of 33,000 acres of recently eliminated lynx habitat in the Forest, in addition to ongoing, planned, and foreseeable actions that will continue to eliminate lynx habitat in the Swan Valley, which is one of the most important areas for lynx recovery and survival.  The cumulative impacts of this logging on lynx survival, viability, and recovery are not adequately addressed in the EA.  The agencies'

failures to adequately address these issues violates NFMA, NEPA, APA and ESA.

      D.  FOURTH CLAIM FOR RELIEF:  The Project and the Forest Service's analyses, actions ,and omissions regarding elk violate NFMA, NEPA, and the APA.  The record indicates a declining elk population, which correlates to increased logging on the Forest.  The Environmental Assessment fails to disclose this correlation.  The Environmental Assessment does not disclose the quantity and quality of habitat necessary for viable elk populations.  Instead the Environmental Assessment discusses standards developed for grizzly bears.  The Environmental Assessment's hiding cover analysis fails to include private lands and fails to disclose how much hiding cover is necessary for elk.  There is also no map of elk hiding cover provided in the Environmental Assessment.  It is not clear how the agency defined or determined elk hiding cover.

    The Environmental Assessment's security analysis does not apply the definition and application guidelines developed for security areas for elk from Hillis et al (1991), which is the best available science.  There is also no map of elk security areas provided in the Environmental Assesment.  The Environmental Assessment does not address elk habitat effectiveness, as discussed in Christensen et al (1993), which is the best available science.  The Environmental Assessment fails to adequately address the impact on elk from logging road use during Project

implementation, including all administrative and contractor use, fails to adequately address the cumulative habitat conditions perceived by elk, including cover and roads on private lands, fails to use the proper analysis scale for elk, and fails to disclose and demonstrate compliance with the Forest Plan provision restricting open road density to 1.0 mi/sq. mi. for elk in moist areas in summer habitat. The record indicates that the Project will violate this standard before, during, and after Project implementation. Accordingly, the Environmental Assessment fails to take a hard look at elk habitat needs, fails to ensure viability and demonstrate Forest Plan compliance, and fails to address the best available science in violation of NEPA, NFMA, and the APA.

    E. FIFTH CLAIM FOR RELIEF: The Project and the Forest Service's analyses, actions ,and omissions regarding old growth management indicator species, old growth forest, and old growth species viabilty violate NFMA, NEPA, and the APA. The Forest Service is failing to comply with its Forest Plan direction that is intended to ensure old growth species viability by conserving a certain amount of old growth habitat, i.e. their habitat proxy. The Swan sub-basin does not have a sufficient amount of old growth habitat to meet the Forest Plan standard, and the Project does not designate recruitment old growth to meet that standard. Surveys for old growth management indicator species (fisher, lynx, goshawk)

9

indicate declining and potentially extirpated populations in the Project area and Swan Valley. Other old growth associated species, such as the pine marten, are dramatically declining in the Swan Valley. The Project allows the degradation of existing old growth stands, and allows clearcutting of mid-seral stands that could be recruitment old growth habitat.

Additionally, the Forest Service admits that the Project will remove suitable habitat for all of its old growth management indicator species in the area: lynx, fishers, and goshawks. The Forest Service is failing to comply with its Forest Plan and failing to ensure old growth species viability in violation of NFMA. The agency's analysis of this issue in the EA fails to take a hard look, is misleading, and fails to present a full and fair discussion that honestly and openly informs the public of the status of old growth species and habitat in the Swan Valley.

F. SIXTH CLAIM FOR RELIEF: The Forest Service's "no effect" conclusions for bull trout, bull trout critical habitat, and water howellia are arbitrary and capricious and violate the ESA, NFMA, NEPA, and the APA. Water howellia, bull trout, and bull trout critical habitat are present in the Project area. The types of activities authorized by the Project are the types of activities that may affect water howellia, bull trout, and bull trout critical habitat. Any possible effect, no matter how small, and no matter whether the effect is beneficial or adverse, requires a

"may affect" conclusion. The Forest Service's "no effect" conclusion was arbitrary and capricious and violates the APA, ESA, NFMA, and NEPA. The agency must consult with FWS regarding these species. Additionally, the logging in a Riparian Habitat Conservation Area violates NFMA. In violation of NEPA, the agency did not disclose and address the INFISH TM-1 logging prohibition in the Environmental Assessment.

    G.  SEVENTH CLAIM FOR RELIEF: The Forest Service's failure to prepare a full EIS for this Project violates NEPA. The Project falls within numerous regulatory factors that establish when an action is significant and thus must be analyzed under a full EIS. For example, the Project will affect multiple ESA-listed species and will cause an admittedly adverse effect to lynx and lynx critical habitat in one of the most important areas of lynx habitat in the Swan Valley. The Project area occurs within a unique area, including wetlands and ecologically critical areas. The Project area contains almost half of the world's water howellia population. Additionally, the Project area contains ecologically critical habitat for both lynx and bull trout. The Project will have cumulative effects. The Forest Service concedes that "the proposed activities in combination with current and reasonably foreseeable vegetation management activities within the Glacier Loon area would contribute to negative cumulative effects to Threatened and Endangered wildlife species." The

Project will allow unpermitted take of ESA-listed species in the Project area, which is a violation of federal law. The Forest Service's conclusion that the Project would have no significant impact is arbitrary and capricious, an abuse of discretion, and in violation of NEPA. The agency must prepare a full EIS for the Project.

**IV.  Computation of damages.**

Monetary damages are not available in this case.

**V.  Pendency or disposition of any related state or federal litigation.**

Plaintiffs are unaware of any related litigation.

**VI.  Proposed stipulations of fact and understanding as to what law applies.**

Regarding understanding of what law applies, the complaint pleads claims under NEPA, NFMA, ESA, and APA. Defendants state: "The government does not dispute these laws apply, provided plaintiffs exhausted administrative remedies, satisfied statutory prerequisites to the assertion of such claims, and possess standing to assert such claims." Regarding stipulations of fact, Plaintiffs propose Complaint paragraphs 20 - 388 as proposed stipulations of facts.

**VII.  Proposed deadlines relating to joinder of parties or amendment of the pleadings.**

Plaintiffs intend to amend their complaint this week pursuant to Fed.R.Civ.P. 15 (a)(1)(B). Deadlines for joinder or further amendment, if applicable, will be set

forth in the parties' joint case management plan, which will be filed with the Court by September 24, 2013.

**VIII.  Identification of controlling issues of law suitable for pretrial disposition.**

This case is suitable for pretrial disposition on cross-motions for summary judgment.

**IX.  The status of any settlement discussions and prospects for compromise of the case.**

At this time, no settlement discussions have occurred and prospects for compromise are unknown.

**X.  Suitability of special procedures.**

At this time, Plaintiffs do not foresee the need for special procedures.

Respectfully submitted this 10th Day of September, 2013.

                                          */s/ Rebecca K. Smith*
                                          Rebecca K. Smith
                                          PUBLIC INTEREST DEFENSE CENTER, PC

                                          Timothy M. Bechtold
                                          BECHTOLD LAW FIRM, PLLC


                                          Attorneys for Plaintiffs