MARK STEGER SMITH
Assistant U.S. Attorney
U.S. Attorney's Office
James F. Battin Federal Courthouse
2601 2nd Ave. North, Box 3200
Billings, MT 59101
Phone: (406) 247-4667 | Fax: (406) 657-6058
E-mail: mark.smith3@usdoj.gov

JOHN C. CRUDEN
Assistant Attorney General
SETH M. BARSKY, Chief
S. JAY GOVINDAN, Assistant Chief
ALISON C. FINNEGAN, Trial Attorney
U.S. Department of Justice
Environment and Natural Resources Division
Wildlife and Marine Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
Phone: (202) 305-0500 | Fax: (202) 305-0275
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

_____

| | |
|---|---|
| SWAN VIEW COALITION, *et al.*, ) | |
| ) | CASE NO. 9:13-cv-00129-DWM |
| Plaintiffs, ) | |
| v. ) | **REPLY MEMORANDUM IN** |
| ) | **SUPPORT OF DEFENDANTS'** |
| CHIP WEBER, Flathead National ) | **MOTION TO LIFT** |
| Forest Supervisor, *et al.*, ) | **INJUNCTION** |
| ) | |
| Defendants. ) | |
| ) | |

**I.     INTRODUCTION**

The Court enjoined the Glacier Loon Project ("the Project"), a fuel-reduction project intended to reduce the risk of high-severity wildfire in areas of the Flathead National Forest, in light of two issues: (1) an Endangered Species Act ("ESA") violation regarding water howellia and bull trout; and (2) the U.S. Forest Service's ("USFS") application of the incorrect objective under Amendment 19 with respect to grizzly bear. *See* September 25, 2014 remand Order (Doc. 51) ("Order"). USFS and the U.S. Fish and Wildlife Service ("FWS") have complied with the Court's instructions to correct these issues, and there is no longer any basis for an injunction.

Plaintiffs' arguments against lifting the injunction consist of meritless attacks against the USFS's well-reasoned conclusions in its amended Biological Assessment regarding grizzly bears and USFS's decision to not conduct a supplemental analysis under the National Environmental Policy Act ("NEPA") regarding application of the Amendment 19 access objectives. Plaintiffs also attempt to revisit issues that already were resolved in Defendants' favor and to raise arguments that they failed to press on summary judgment and, thus, are not properly at issue at this stage of the case. Plaintiffs' arguments have no merit and the Court should grant Defendants' motion.

## II. ARGUMENT

### A. Plaintiffs Do Not Dispute That USFS And FWS Have Completed ESA Consultation For Water Howellia And Bull Trout.

The Court remanded the matter so that USFS could complete consultation for water howellia and bull trout in light of USFS's prior conclusions that (1) the Project "indirectly affects" water howellia and (2) the Project's "trivial impacts on bull trout habitat in [the] Glacier Creek Analysis Area" were sufficient to "trigger ESA consultation under the low 'may affect' threshold." Order at 21 (quoting V2:44630). Plaintiffs fail to challenge USFS's amended biological assessments for water howellia, bull trout, and designated critical habitat for bull trout, or FWS's concurrence with those determinations. *See* Doc. 90 ("Pls. Br."). Thus, there is no dispute that the agencies have complied with the Court's remand order and satisfied their ESA obligations with respect to these species.

### B. USFS Properly Analyzed The Project For Effects On Grizzly Bears.

Recognizing that USFS has complied with the Court's direction to reassess its Section 7 analysis regarding grizzly bears in light of the application of the correct access objective under Amendment 19, Order at 55, Plaintiffs repackage the argument that they made in their summary judgment brief: that it was arbitrary for the agencies to reach a "not likely to adversely affect" determination for grizzly bears. Pls. Br. at 1-10. According to Plaintiffs, USFS ignored the definitions of

3

"not likely to adversely affect" and "likely to adversely affect." *Id*. at 2. Plaintiffs fail to acknowledge the full scope of USFS's determination and, in any event, there is no support for these assertions.

In its amended Biological Assessment, USFS determined that Project activities combined with baseline conditions in the Glacier Loon and Buck Holland subunits may affect, and are likely to adversely affect, grizzly bears. Amended Bear Biological Assessment ("2015 Bear Biological Assessment"), Exhibit D.[1] FWS agreed with USFS's determination that access baseline conditions are adverse, but Project activities are insignificant and discountable, thus, "[o]ther than access, no [Project activities] are likely to adversely affect grizzly bears." FWS Letter, Exhibit E, at vi.[2] Although the Project would cause a reduction of foraging habitat and hiding cover, these temporary effects will be minimized through timing and location constraints on Project activities. Exhibit D, at 26. Temporary roads would be constructed in the Project area, but these would be "reclaimed following use." *Id*. The Project would also decommission 8.4 miles of existing roads, resulting in an overall net decrease in road density. *Id*. at 16.

---

[1] All citations to exhibits refer to the Exhibits attached to Defendants' Motion. *See* Doc. 87-1 to 87-11.

[2] Plaintiffs also state that denning habitat "will be degraded and measurably reduced during Project implementation." Pls. Br. at 4. This is incorrect. 2015 Bear Biological Assessment, Exhibit D, at 11 (there "is no proposed activity in known or potential grizzly bear denning habitat").

4

The agencies engaged in formal consultation, and rationally determined that, although existing conditions are adverse, the factors listed above support a conclusion that the Project's temporary effects are not likely to appreciably reduce the likelihood of the survival and recovery of grizzly bears in the wild.  50 C.F.R. § 402.02.  The Court should defer to this highly technical analysis within the agencies' particular area of expertise.  *San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 602 (9th Cir. 2014) (courts should utilize their most deferential standard of review when examining scientific determinations made by an agency with special expertise).

Plaintiffs also contend that "the baseline road density conditions in the Glacier Loon subunit and Buck Holland subunit are causing 'take' of grizzly bears in the form of 'harm' under the ESA," Pls. Br. at 6, and that the Project itself will cause additional Section 9 take and Section 7 adverse effects beyond the baseline habitat conditions.  *Id.*  Defendants dispute both points.  The adverse effects alleged by Plaintiffs already have been analyzed and fall within the biological opinions and incidental take statements under the Swan Valley Grizzly Bear Conservation Agreement and Amendment 19.  FWS Letter, Exhibit E, at vi.  During Project activities, there will be a temporary increase in open road and total road densities, but road densities will change, both increasing and then decreasing, as restricted roads and temporary roads are utilized, then closed or reclaimed.

2015 Bear Biological Assessment, Exhibit D, at 20. USFS determined that the changes would be temporary, and the Project will reduce road densities in both subunits and move them toward Amendment 19's objectives of improving habitat security for bears. *Id*. at 20, 22, 26. Moreover, "[b]ased on current timelines[,] the majority of [Project] activities would occur during the denning period for bears. Winter conditions restrict harvest activities eliminating the possibility for the 'worst case scenario' during project ORD calculations." *Id*. at 20-21.

Further, although mentioned nowhere in Plaintiffs' Brief, USFS engaged in a second-tier, site-specific consultation with FWS in light of USFS's determination that the baseline condition in the Glacier Loon and Buck Holland subunits continue to be adverse to grizzly bears based on road density objectives. FWS Letter, Exhibit E. In FWS's biological opinion, the existing access conditions for these subunits and the road use associated with the Project "are consistent with our analysis of effects on grizzly bears in both the 1995 and the 2014 programmatic biological opinions and that the proposed action would be in compliance with the incidental take statements associated with those biological opinions." *Id*. at v. Thus, FWS determined that the Project is not likely to jeopardize grizzly bears. *Id*. There is ample support for FWS's determination.

Finally, Plaintiffs argue that USFS misrepresented the Project's compliance with the Flathead Forest Plan and amendments because USFS has not met

6

Amendment 19's non-discretionary five-year security objectives. Pls. Br. at 9. There is no dispute that the subunits do not currently comply with Amendment 19, but, as this Court already has recognized, the schedule for meeting Amendment 19's objectives has been modified to "through 2018 or until the Forest Plan revision is completed, whichever comes first." Order at 28 (quoting Y8:61799). Thus, USFS did not make any misrepresentation and has complied with the Flathead Forest Plan and its amendments.

The agencies' thorough and direct response to the Court's Order regarding grizzly bears presents a "significant change in facts or law" sufficient to lift the injunction.

### C. USFS Properly Determined That Its 2015 Amended Biological Assessments Do Not Trigger The Need For A Supplemental NEPA Analysis.

Plaintiffs argue that USFS should have prepared "a supplemental environmental assessment or EIS" in response to the Court's decision that USFS erroneously concluded that the numerical objectives under Amendment 19 do not apply to the subunits in the Project area, Pls. Br. at 10-15, and again attack USFS's non-compliance with the Amendment 19 objectives. These arguments have no merit.

The Court did not order the agencies to take any particular steps under NEPA on remand with respect to the Project. USFS, however, considered whether

7

its 2015 amended biological assessments for water howellia, bull trout, designated critical habitat for bull trout, and wildlife raised any new circumstances or information requiring a supplement to the environmental assessment for the Project. *See* U.S. Forest Service, Memorandum re: Determination of Whether Supplementation of the Glacier Loon Fuels Reduction and Forest Health Environmental Assessment is Required (08/24/2015) ("Memorandum") (Exhibit F). USFS concluded, in accordance with NEPA and its regulations, that the new analyses did not constitute "'significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts' that warrant corrections, supplementation, or revision to the Glacier Loon E[nvironmental] A[ssessment]." *Id*. at 1.

NEPA requires agencies to supplement a NEPA analysis in response to "significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts." 40 C.F.R. § 1502.9(c)(1)(ii). But supplementation is not required every time new information comes to light after a NEPA analysis is finalized because "[t]o require otherwise would render agency decisionmaking intractable, always awaiting updated information." *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 373 (1989). An agency's decision not to prepare a supplemental NEPA analysis "may be overturned only if it was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Cold*

8

*Mountain v. Garber*, 375 F.3d 884, 892 (9th Cir. 2004). "Whether new information requires supplemental analysis is a 'classic example of a factual dispute the resolution of which implicates substantial agency expertise.'" *Tri-Valley CAREs v. U.S. Dep't of Energy*, 671 F.3d 1113, 1130 (9th Cir. 2012) (quoting *Marsh*, 490 U.S. at 376). Even the cases cited by Plaintiffs demonstrate that it is proper for an agency to rely on a supplemental information report, unless an agency determines that environmental impacts are "significant or uncertain, as compared with the original design's impacts." *Idaho Sporting Cong. v. Alexander*, 222 F.3d 562, 566 (9th Cir. 2000); *accord Olympic Forest Coal. v. USFS*, 556 F. Supp. 2d 1198, 1206 (W.D. Wash. 2008) ("An agency must make a reasoned decision based on the significance, or lack of significance, of the new information and must prepare a supplemental NEPA document when there are significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts.") (citation omitted).

  USFS's Memorandum (Exhibit F) correctly determined the new information in this case did not require supplemental NEPA analysis. Exhibit F, at 7. The Environmental Assessment did not indicate that Amendment 19 road density objectives apply in the affected subunits. However, the Environmental Assessment explicitly identified each subunit's percent of open and total road density and security core, and analyzed the Project's impacts on grizzly bears, including those

areas where 19/19/68 objectives were not achieved. *See* V2:44644-44657 and Tables 3-70,3-71. The Environmental Assessment further disclosed that the Project would meet Amendment 19 standards for grizzly bear, as there would be no net increase in open or total road density and no net decrease in security core. Further, road decommissioning associated with the selected alternative would reduce total motorized access densities; therefore the Project would result in a net gain towards Amendment 19 objectives. Memorandum, Exhibit F, at 7.[3]

USFS's Environmental Assessment clearly disclosed the effects of Project activities on grizzly bears in terms of the 19/19/68 objectives. *Id*. And, consistent with the Court's holding, USFS's Memorandum recognized that Amendment 19's standard (no net increase or net loss) applies regardless of the amount of federal ownership in grizzly bear subunits. *Id*. Thus, USFS exercised its expertise and reasonably concluded that "the effects to grizzly bears from project activities have not changed as a result of the [2015] BA's reassessment of the A19 objectives and therefore the nature, scope and impact of treatment effects of the Glacier Loon on grizzly bears remains the same as documented in the EA." *Id*. This conclusion is bolstered by the Environmental Assessment's existing analysis of security core and open and total road densities in terms of the Amendment 19 numerical objectives.

---

[3] The Amendment 19 19/19/68 objectives for grizzly bear are not required to be met by individual projects. Rather as this Court has recognized, the schedule for Amendment 19 provides from "through 2018 or until the Forest Plan revision is completed, whichever comes first." Order at 28.

10

Thus, while Plaintiffs argue in favor of a supplemental NEPA analysis, they fail to show any "significant new circumstances or information relevant to environmental concerns," 40 C.F.R. § 1502.9(c)(1)(ii), or to provide any cognizable argument that USFS was arbitrary or capricious in its determination that no significant new circumstances or information existed.

Plaintiffs also again attack the timing of USFS's compliance with the Amendment 19 objectives. Pls. Br. at 15. The Court already has resolved this issue in favor of the agencies. *See* Section II.B, *supra*.

### D.  The *Cottonwood* Decision Provides No Basis To Continue The Injunction.

Plaintiffs argue that the Court should decline to lift the injunction because the Ninth Circuit recently issued a decision "requiring the agencies to complete ESA Section 7 reconsultation on the Lynx [Direction]." Pls. Br. at 18 (citing *Cottonwood Envtl. Law Ctr. v. USFS*, 789 F.3d 1075 (9th Cir. 2015)).[4] But the Court previously determined that the agencies' conclusions in this case did not solely rely on the Lynx Direction and, therefore, the Court should reject Plaintiffs' efforts to again raise an issue which already was decided in Defendants' favor.

---

[4]  In their summary judgment briefing, Plaintiffs relied on the lower court decision that preceded *Cottonwood*. Doc. 22 at 21-22 (citing *Salix v. USFS*, 995 F. Supp. 2d 1148 (D. Mont. 2014)). USFS has filed a petition for rehearing or rehearing *en banc*, which remains pending before the Ninth Circuit.

In its Amended Biological Assessment for the Project, USFS determined that the Project was likely to adversely affect the designated critical habitat of the Canada Lynx (X20:59389), and thus initiated formal consultation with FWS under Section 7 of the ESA. 50 C.F.R. §§ 402.12(k), 402.13. That process culminated with FWS's conclusion that the Project was not likely to adversely modify or destroy lynx critical habitat. G2:2552; X47:60948. On summary judgment, Plaintiffs argued that the formal consultation process was invalid because USFS and FWS should have first reinitiated consultation on the Lynx Direction. Doc. 22 at 21-22. However, the agencies expressly did *not* rely on the Lynx Direction's standards and guidelines, but rather, utilized the Primary Constituent Elements directly from the lynx critical habitat rule as the basis of their analysis of potential impacts to lynx critical habitat. Doc. 31 at 31-43. The Court endorsed this approach and held that "the record contains a reasonable independent basis for the agencies' conclusions with respect to lynx critical habitat and does not rely solely on the Lynx Direction." Order at 39. Thus, the Court upheld the agencies' determination with respect to lynx. *Id*.

The Ninth Circuit's *Cottonwood* decision does not apply here because USFS conducted "[a]dditional detailed analysis . . . to ensure that the determination for lynx critical habitat did not rely on [the Lynx Direction]." Order at 39 (quoting

X20:59386). Thus, the *Cottonwood* decision has no relevance here and should not serve as a basis for denying Defendants' request to lift the injunction.

### E. Plaintiffs' New Claim That Reconsultation Is Required On Amendment 19 Has No Merit.

In arguing that the agencies must reinitiate or complete consultation on Amendment 19 to address the changes in land ownership from the Legacy Lands acquisition, Plaintiffs raise an argument that they failed to press on summary judgment and fail to identify an agency action that would trigger the obligation for USFS to initiate consultation.

First, Plaintiffs should not be permitted to belatedly assert that the agencies must reinitiate consultation on Amendment 19 in light of the Legacy Lands acquisition. In Paragraph 506 of the Second Amended Complaint, Plaintiffs alleged that the agencies violated the ESA and NEPA by their failure "to incorporate this significant new information [of the Legacy Lands acquisition] into a revised biological assessment/biological opinion/incidental take statement and/or supplemental NEPA analysis addressing and disclosing which units now possess over 75% National Forest System lands, and setting forth an implementation schedule for the application of Amendment 19 to those units." Doc. 19 ¶ 506. Plaintiffs did not advance this argument in their motion for summary judgment, and instead made Amendment 19 a centerpiece for several other arguments in that motion. Doc. 22. Plaintiffs should be barred from asserting this argument now

because they failed to raise it until these post-judgment proceedings. *See*, *e.g.*, *Jenkins v. Cnty. of Riverside,* 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) (plaintiff abandoned two of her claims by not raising them in opposition to the motion for summary judgment); *Alaska Ctr. for Env't v. USFS*, 189 F.3d 851, 858 n.4 (9th Cir. 1999) ("Arguments not raised in opening brief are waived."); *see also Grenier v. Cyanamid Plastics*, 70 F.3d 667, 678 (1st Cir. 1995) ("[A]n issue raised in the complaint but ignored at summary judgment may be deemed waived").

Moreover, Plaintiffs' argument that USFS must reinitiate consultation to "acknowledge that the Amendment 19 objectives apply now to the seven Legacy Land subunits" is incorrect as a matter of law. While Plaintiffs contend that *Swan View Coalition v. Barbouletos*, 2008 WL 5682094 (D. Mont. June 13, 2008) demonstrates that FWS should issue a biological opinion that "addresses the application of the Amendment 19 objectives to the seven affected subunits," Pls. Br. at 26-27, *Barbouletos* clearly states that "Amendment 19 is not an action or a project; it is a part of the Forest Plan, which is a programmatic document that does not authorize any specific projects and does not obligate the Forest Service to undertake specific projects." 2008 WL 5682094, at *11. The same principles apply here: USFS has applied the correct access objectives to the two subunits involved in the Project as required by the Court. There is no requirement to reinitiate consultation on Amendment 19 regarding other Legacy Land subunits

14

until there is some "agency action" that may affect listed species or habitat. 16 U.S.C. § 1536(a)(2); 50 C.F.R. §§ 402.02, 402.13, 402.14. Plaintiffs have failed to identify *any* agency action involving the other subunits. Moreover, as Plaintiffs acknowledge, the agencies plan to reinitiate consultation on Amendment 19 in 2018, or when the Flathead Forest Plan is revised, whichever occurs first. Y8:61905.

## III.  CONCLUSION

The agencies have completed the analysis ordered by the Court on remand with respect to the Project, and no further work remains to be done to remedy the violations of the ESA as found by the Court. Thus, there is no reason to continue the injunction. Plaintiffs do not dispute that the agencies performed the analysis required by the Court with respect to water howellia, bull trout, and bull trout critical habitat. And Plaintiffs' attacks on USFS's well-reasoned conclusions with respect to grizzly bears have no merit. Plaintiffs' argument regarding the need for a NEPA analysis overlooks the standards established by the Ninth Circuit, which allow an agency to utilize its expertise to decide if a supplemental environmental analysis is necessary. This is exactly what USFS did here. Further, the Court should reject Plaintiffs' attempts to revisit its arguments on the Lynx Direction and to press arguments that were not raised on summary judgment. The Court should lift the injunction and allow the Glacier Loon Project to proceed.

Respectfully submitted this 20th day of November, 2015.

        MICHAEL W. COTTER
        United States Attorney
        MARK STEGER SMITH
        Assistant U.S. Attorney

        JOHN C. CRUDEN
        Assistant Attorney General
        United States Department of Justice
        Environment & Natural Resources Division
        SETH M. BARSKY, Chief
        S. JAY GOVINDAN, Assistant Chief

        /s/ Alison C. Finnegan
        ALISON C. FINNEGAN, Trial Attorney
        (Pennsylvania Bar No. 88519)
        Wildlife & Marine Resources Section
        Benjamin Franklin Station, P.O. Box 7611
        Washington, D.C. 20044-7611
        Tel: (202) 305-0500; Fax: (202) 305-0275
        *Attorneys for Defendants*

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1(d)(2), I certify that the attached brief is double-spaced, has a proportionally spaced typeface of 14 points, and contains 3,248 words of text.

    /s/ Alison C. Finnegan

**CERTIFICATE OF SERVICE**

I certify that on November 20, 2015, I electronically filed the foregoing with the Clerk of the U.S. District Court of Montana using the CM/ECF system, which will send a Notice of Electronic filing to all counsel of record.

          /s/ Alison C. Finnegan