IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| SWAN VIEW COALITION, *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> CHIP WEBER, *et al.*, <br><br> Defendants. | CV 13-129-M-DWM <br><br><br> OPINION <br> and ORDER |

In June 2013, Plaintiffs Swan View Coalition, Friends of the Wild Swan, Native Ecosystems Council, and Alliance for the Wild Rockies ("Plaintiffs") filed a lawsuit challenging the Glacier Loon Fuels Reduction and Forest Health Project ("the Project") under the Environmental Species Act ("ESA"), the National Environmental Policy Act ("NEPA"), and the National Forest Management Act ("NFMA"). Following summary judgment, the Court enjoined the Project and remanded it to the agency for further action. Pending before the Court is Defendants' Second Motion to Dissolve Injunction. (Doc. 98.) That motion is granted. Plaintiffs unsuccessfully attempt to re-litigate matters already decided. Because Defendants have shown compliance with the ESA with regard to the wolverine and the Court has already held there is no NFMA violation with respect to Amendment 19 compliance, the injunction is dissolved.

1

## BACKGROUND

The Project area includes 37,320 acres within the boundaries of the Glacier Loon and Buck Holland Grizzly Bear Subunits in the Swan Lake Ranger District of the Flathead National Forest. AA-147:00069980. It "was initiated in 2011 to reduce the risk of high-severity landscape . . ., improve forest health and resistance to insect epidemics, and provide wood products to the local timber industry." AA-147:00069981. The original Draft EA was released to the public in August 2012 and a Decision Notice and Finding of No Significant Impact were signed by the Forest Supervisor on February 12, 2013. *Id.* On September 25, 2014, this Court granted summary judgment in favor of the defendants on all but four of Plaintiffs' claims, two of which relate to the Project. (Doc. 51.) First, the United States Forest Service ("Forest Service") improperly reached a "no effect" determination for water howellia and bull trout under ESA Section 7 by failing to recognize the low threshold for a "may affect" determination. (*Id.* at 20–21.) Second, the Forest Service erroneously determined Amendment 19, which provides protections for grizzly bears, did not apply to certain subunits in the Project area. (*Id.* at 26-27.) The Project was enjoined and remanded to the agency. (*Id.* at 55.)

In December 2015, Defendants moved to lift the injunction on the grounds that the Forest Service and the United States Fish and Wildlife Service ("Fish and Wildlife Service") completed the necessary analysis. (Doc. 86.) The Court

2

determined that while the agencies met their Section 7 obligations for all three species, a supplemental environmental assessment ("EA") was required under NEPA. (Doc. 92.) The injunction remained in place.

Defendants seek to dissolve that injunction on the grounds that the Forest Service has since supplemented its NEPA analysis. The agency published a Draft Supplemental EA in July 2017, a Final Supplemental EA in April 2018, and a Final Decision Notice and Finding of No Significant Impact approving the Project in September 2018. Defendants insist that "[b]ecause the agencies have completed the analysis required on remand and remedied the procedural violations identified in the Court's September 25, 2014 Order, there is no reason for the Glacier Loon Project to continue to be enjoined." (*Id.* at 4–5.) Plaintiffs disagree, arguing the injunction should be maintained because (1) Defendants have not shown ESA compliance for the wolverine and (2) the Project fails to meet the Amendment 19 access criteria deadline in violation of NFMA.

## LEGAL STANDARDS

### I. Rule 60(b)

Rule 60(b) allows courts to "relieve a party or its legal representative from a final judgment, order, or proceeding [if] . . . the judgment has been satisfied, released, or discharged." Fed. R. Civ. P. 60(b)(5). A party seeking dissolution of an injunction may meet its initial burden by showing that there has been a

3

significant change in facts or law. *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 384 (1992).

## II. The Administrative Procedure Act

Courts review claims regarding the ESA, NEPA, and NFMA under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 706 *et seq. See Native Ecosystems Council v. Dombeck*, 304 F.3d 886, 891 (9th Cir. 2002). Under the APA, "[a] reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). An action is arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983).

## ANALYSIS

## I. Wolverine

Plaintiffs' first challenge is based on the dynamic status of the wolverine under the ESA. At the time of the original decision documents for the Project, the wolverine was not yet proposed for listing and was therefore not considered in the

4

agency's Biological Assessment. (*See* Doc. 51 at 22.) But, the Forest Service considered Project impacts to the wolverine in the context of its status as a "sensitive species" under the Forest Plan. (*See id.*) The wolverine's status under the ESA changed in February 2013, when it was proposed for listing. *See* 78 Fed. Reg. 7864 (Feb. 4, 2013). Accordingly, on February 22, 2013, the Forest Service prepared an additional analysis, concluding "the project would not result in Jeopardy to the wolverine population." (Doc. 51 at 23 (citing H160:11901–03).) The Court's September 25, 2014 Order held these two documents were sufficient to qualify as a biological assessment; however, the Court remanded this issue for further consideration because the Forest Service failed to show it consulted with the Fish and Wildlife Service. (*Id.*)

But, in August 2014, the Fish and Wildlife Service had withdrawn its proposal to list the wolverine. 79 Fed. Reg. 47522 (Aug. 13, 2014). Thus, the Court clarified in its December 8, 2014 Order that "Absent a proposal to list the wolverine, the Forest Service is currently under no obligation to confer or consult with the Fish and Wildlife Service regarding the effects on the species." (Doc. 77 at 5.) Then, in April 2016, Judge Christensen found unlawful and vacated the Fish and Wildlife Service's rule withdrawing the proposed listing rule for wolverines. *See Defenders of Wildlife v. Jewell*, 176 F. Supp. 3d 975 (D. Mont. 2016). The wolverine is therefore currently proposed for listing and Plaintiffs are correct that

so long as the Project "may affect" wolverines, the Forest Service is required to consult with the Fish and Wildlife Service. *Karuk Tribe of Cal. v. U.S. Forest Serv.*, 681 F.3d 1006, 1027 (9th Cir. 2012); 50 C.F.R. § 402.14(a).

Defendants do not disagree with any of the above, but rather argue that the necessary consultation occurred. In May 2014, the Forest Service prepared a "Programmatic Biological Assessment for North American Wolverine" "to describe and analyze a variety of projects routinely conducted on National Forest System lands within the Northern Region that are not likely to jeopardize the continued existence of the North American wolverine." AA-88:00068419. Covered activities included, *inter alia*, timber harvest, mechanical equipment use, roads and road maintenance, and forest products. *Id.* The Assessment concludes that even though some of the proposed activities may have localized negative impacts, they would not "rise to the level of a threat to the continued existence of the [distinct population segment] of the North American wolverine" because "wolverines are not dependent on site specific vegetation of habitat features." AA-88:00068424. On May 23, 2014, the Fish and Wildlife Service concurred with the Forest Service's analysis that these projects would not jeopardize the wolverine, making a conference unnecessary. AA-29:00063147–48. The Supplemental EA references these documents, concluding that the Project falls within the scope of the programmatic Biological Assessment. *See* AA-70:00067290.

6

Agencies may engage in "programmatic consultation" which "concerns planning documents and other scenarios in which an agency is preparing to undertake a number of later, similar actions, the specifics of which have not yet been defined." *Ctr. for Sierra Nevada Conserv. v. U.S. Forest Serv.*, 832 F. Supp. 2d 1138, 1144 (E.D. Cal. 2011) (citing *Gifford Pinchot Task Force v. U.S. Fish & Wildlife Serv.*, 378 F.3d 1059, 1062 (9th Cir. 2004)). Here, the record shows the Forest Service (1) both performed project-specific analysis and drafted a programmatic biological assessment regarding the wolverine and (2) conferred with the Fish and Wildlife Service regarding potential effects. These actions meet the requirements of the ESA.

## II.  Amendment 19

Plaintiffs further argue that the Project violates NFMA because it does not comply with the access management requirements for grizzly habitat set out in Amendment 19 of the Flathead Forest Plan. In response, Defendants argue that this challenge exceeds the scope of the remand order and Amendment 19 compliance was already adjudicated. Defendants have the better point.

Plaintiffs argue that this Court's September 2014 determination that immediate compliance with the 19/19/68 criteria (19% or less high-density open motorized access / 19% or less high-density total motorized access / 68% or more security core) did not violate NFMA is no longer reasonable given the passage of

the five-year deadline and the looming ten-year deadline. As explained in this Court's previous order, compliance with Amendment 19 was "modified to through 2018 or until the Forest Plan revision is completed, whichever comes first."[1] (Doc. 51 at 28 (internal quotation marks and citation omitted).) While the Supplemental EA states that neither the Project, nor the Glacier Loon or Buck Holland Subunits presently, are compliant,[2] AA-70:00067248, that noncompliance was contemplated by this Court's September 2014 Order, and underscored by the Forest Service's plan to unveil an amended Forest Plan.

CONCLUSION

Based on the foregoing, IT IS ORDERED that Defendants' second motion to dissolve the injunction (Doc. 98) is GRANTED and the injunction of the Glacier Loon Project is LIFTED.

DATED this 11 day of December, 2018.

15:53 P.M.

Donald W. Molloy, District Judge
United States District Court

---

[1] Plaintiffs' challenge the legality of the compliance extension is untimely.
[2] Nevertheless, the Project would reduce road densities in both subunits, "improving habitat security for bears." See AA-70:00067249.

8