
FILED
FEB 27 2019
Clerk, U.S. District Court
District Of Montana
Missoula

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| SWAN VIEW COALITION, et al., | CV 13-129-M-DWM |
| Plaintiffs, | |
| vs. | ORDER |
| CHIP WEBER, et al., | |
| Defendants. | |

Plaintiffs seek to enjoin the Glacier Loon Project pending appeal of the Court's December 11, 2018 Order, (Doc. 104). (Doc. 107.) The motion is denied.

## LEGAL STANDARD

A motion for an injunction pending appeal is considered under the same standard as a motion for a preliminary injunction. *See Tribal Vill. of Akutan v. Hodel*, 859 F.2d 662, 663 (9th Cir. 1988); Fed. R. Civ. P. 62(d). A party seeking an injunction must show (1) a likelihood of success on the merits, (2) it is likely to suffer irreparable harm, (3) the balance of equities favors an injunction, and (4) an injunction is in the public interest. *See Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008). The last two factors merge when the federal government is the opposing party. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). A party seeking an injunction "must establish that irreparable harm is

1

*likely*, not just possible." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). The other factors are then assessed on a sliding scale. *Id.* at 1135. For example, when the "balance of hardships tips sharply in the plaintiff's favor," an injunction may issue on a showing of only "serious questions going to the merits." *Id.*

### ANALYSIS

### I. Likelihood of Success

Plaintiffs appear to concede that while they cannot show they are likely to succeed on the merits, they at the very least raise serious questions as to those issues. (Doc. 108 at 22.) While many of Plaintiffs' arguments are merely a rehash of their summary judgment position, they raise some good points. First, the dynamic status of the wolverine has complicated the evaluation of the Project's impact on the species. Second, while Plaintiffs did not previously argue or brief their assertion that amending a deadline under the Endangered Species Act ("ESA") cannot alter a deadline under the National Forest Management Act ("NFMA"), they raise that challenge now. As argued by Plaintiffs, there does not appear to be precedent directly on point. *See Esparza v. SmartPay Leasing, Inc.*, 2017 WL 6731595, at *2 (N.D. Cal. 2017). Though this argument may be waived, *see Great Old Broads for Wilderness v. Kimbell*, 709 F.3d 836, 846 (9th Cir. 2013) (discussing administrative exhaustion), Plaintiffs have "assert[ed] specific grounds

2

as to *where* or *why* this Court erred in its decision," *Native Ecosystems Council v. Marten*, 2018 WL 4301371, at *1 (D. Mont. Sept. 10, 2018). Finally, Plaintiffs emphasize that this Court labelled the 2014 grizzly bear decision a "close call." (*See* Doc. 92 at 9.) As a result, Plaintiffs have raised serious questions on the merits.

## II. Irreparable Harm

Plaintiffs must show that they are likely to suffer an irreparable harm in the absence of injunctive relief. *All. for the Wild Rockies*, 632 F.3d at 1135. Such a showing is required even in cases involving an ESA challenge. *See Cottonwood Envt'l Law Ctr. v. U.S. Forest Serv.*, 789 F.3d 1075, 1090–91 (9th Cir. 2015). That said, "establishing irreparable injury should not be an onerous task for plaintiffs," *id.* at 1091, and the standard is met so long as a plaintiff can show that a "specific project[] will likely cause irreparable damage to its members' interests," *id.* at 1092.

Plaintiffs argue that the Project will interfere with "the naturally functioning ecosystems of the Forest and Project analysis areas, in particular their interests in looking for, viewing, studying, and enjoying elk, grizzly bears, wolverine, and lynx undisturbed in their natural surroundings." (Garrity Decl., Doc. 108-1 at ¶ 4.) Plaintiffs further refer to "[l]ogging, burning, road-building, road use, and road reconstruction" as "ecological and esthetic degradations" that "will render the area

3

unsuitable for [Plaintiffs' members'] . . . esthetic, recreational, scientific, spiritual, vocational, and educational activities." (*Id.* at ¶ 6.)[1] In later-provided declarations, Plaintiffs also raise general concerns about how a logging and treatment project may affect Lindbergh Lake and its surrounding area. (Page Decl., Doc. 110; Giles Decl., Doc. 111.)

Nevertheless, Plaintiffs fail to identify specific harms associated with the Project. While they provide a general list of ground-disturbing activities, they fail to show how the activities of this specific Project will affect their members. *See Sierra Forest Legacy v. Sherman*, 951 F. Supp. 2d 1100, 1111 (E.D. Cal. 2013). The argument that logging is per se enough to warrant an injunction has been rejected. *Earth Island Inst. v. Carlton*, 626 F.3d 462, 474 (9th Cir. 2010). Moreover, the schedule of ground-disturbing is greatly limited by the Swan Valley Grizzly Bear Conservation Agreement. (*See* King Decl., Doc. 109-1 at ¶¶ 8, 9 10, 16; Ruby Decl., Doc. 109-4 at ¶ 5.) Plaintiffs fail to show specific activities that

---

[1] Plaintiffs also submitted two declarations after Defendants' response raising concerns about the effects a logging and treatment project may have on Lindbergh Lake and its surrounding area. (*See* Page Decl., Doc. 110; Giles Decl., Doc. 111.) Defendants have moved to strike these documents on the grounds that their dilatory filing deprived Defendants the opportunity to respond. (Doc. 112 (citing *Pacquiao v. Mayweather*, 2010 WL 3271961, at *1 (D. Nev. Aug. 13, 2010).) That motion is granted. *See Tovar v. U.S.P.S.*, 3 F.3d 11271, 1273 n.3 (9th Cir. 1993). But, even if the declarations were part of the Court's consideration, they do not provide the requisite link to Project-specific activities to show irreparable harm is likely or that the failure to enjoin the Project will preserve the status quo.

4

fall within the appellate timeframe would permanently affect their interest. That is especially important because over the long term, the Project involves stewardship contracts that will require "road decommissioning, re-contouring, fuels reduction and slashing and pre-commercial thinning" as part of the logging projects. (King Decl., Doc. 109-1 at ¶ 3; Dowling Decl., Doc. 109-2 at ¶ 6; Richardson Decl., Doc. 109-3 at ¶ 8.) Such activities will ultimately reduce sediment, benefit wildlife, and help restore watersheds. (Dowling Decl., Doc. 109-2 at ¶¶ 5, 7, 11, 21.)

Additionally, treatment activities are expected to "facilitate regeneration of desired species – western larch, western white pine, and ponderosa pine" and improve overall forest health. (*See id.* at ¶¶ 5, 29.) And, as discussed in more detail below, Defendants have shown that Project activities will benefit a number of the protected species and have minimal short-term impacts. Defendants also identify a number of potential harms that may occur if the Project is delayed any further, including deferring long-term habitat improvement, (Ruby Decl., Doc. 109-4 at ¶¶ 8, 14), and increased wildfire risk that threatens the entire natural landscape, (Dowling Decl., Doc. 109-2 at ¶¶ 18, 19; Ruby Decl., Doc. 109-4 at ¶¶ 9, 12, 13).

In light of Plaintiffs' general allegations about the impacts of the Project and the limitations placed on Project activity, Plaintiffs fail to show irreparable harm.

## III. Balance of Equities and Public Interest

5

Finally, Plaintiffs must show that the balance of the equities tip sharply in their favor. *All. for the Wild Rockies*, 632 F.3d at 1135. They fail to do so.

Plaintiffs first argue that in cases involving the ESA, "the public interest and the balance of equities factors always weigh in favor of plaintiff's request for an injunction." (Doc. 108 at 8.) That is not an accurate characterization of the law. Rather, in an ESA case, the preservation of the species takes precedence over the parties' interests, foregoing a balancing test. *See Cottonwood Envt'l Law Ctr.*, 789 F.3d at 1090 (collecting cases); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313–14 (1982) (focusing on what action is necessary to preserve the species). There is a difference between the interests of a species and the interests of the party seeking the injunction; Plaintiffs misstate the law by conflating the two.

In 2014, this Court rejected Plaintiffs' request for a preliminary injunction on the grounds that "Defendants have presented evidence that enjoining the Project would actually result in greater harm to the environment and protected species." (Doc. 41 at 4.) That remains the case today. The Project will result in the decommission and recontouring of roads, which will benefit both grizzly bears and Canada lynx. (*See* Ruby Decl., Doc. 109-4 at ¶¶ 8, 14.) The Project also includes a number of measures to mitigate negative effects, such as coverage retention and limiting activity during bears' active periods. (*Id.* at ¶ 8.) Lynx will also benefit from the elimination of dead and dense timber and the creation of more snow shoe

hare habitat. (*Id.* at ¶¶ 11, 13.) Project effects on wolverine are also anticipated to be minimal. (*Id.* at ¶¶ 16, 17.) The Project is also expected to reduce wildfire risk, (Dowling Decl., Doc. 109-2 at ¶ 8), and aid in economic development, (Richardson Decl., Doc. 109-3; Sanders Decl., Doc. 109-5). While these interests take a back seat to those of the species, they further demonstrate an absence of a *sharp* equitable tip in the Plaintiffs' favor.

As was the case in 2014, "even assuming Plaintiffs have raised substantial questions on the merits, injunctive relief is not warranted." (Doc. 41 at 5.)

## CONCLUSION

Because Plaintiffs have not made the requisite showing to obtain an injunction pending appeal,

IT IS ORDERED that Defendants' motion to strike (Doc. 112) is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's motion for an injunction pending appeal (Doc. 107) is DENIED.

DATED this 27th day of February, 2019. 12:02 P.M.

Donald W. Molloy, District Judge
United States District Court

7